669 P.2d 255

**PHELPS DODGE CORPORATION,**
Petitioner-Appellee,

v.

**NEW MEXICO EMPLOYMENT SECURITY DEPARTMENT and Randy Chavez, Respondents-Appellants.**

**No. 14746.**

Supreme Court of New Mexico.

Sept. 13, 1983.

Rodey, Dickason, Sloan, Akin & Robb, Duane C. Gilkey and Patrick Macias, Albuquerque, for petitioner-appellee.

J.R. Baumgartner, Albuquerque, for respondents-appellants.

OPINION

FEDERICI, Justice.

Petitioner-employer Phelps Dodge Corporation (Phelps Dodge) filed a petition for writ of certiorari in the district court in which it sought a review of the decision of the Board of Review of the New Mexico Employment Security Department granting to respondent-claimant, Randy Chavez (Chavez) unemployment benefits.

Phelps Dodge employed Chavez from May 19, 1981 to August 20, 1981 in its special summer employment program for college students. In his application for employment in the program, Chavez specifically stated that he sought only temporary employment, not to extend beyond August 25, 1981, as he was a full-time student at New Mexico Highlands University. He also stated that he would return to school in the fall of 1981. Chavez did return to school soon after August 25, 1981 for the fall semester. Chavez left school in January 1982 to look for work; when he could find none, he applied for unemployment benefits. These facts are reflected in the findings of fact made by the trial court.

The Employment Security Department (ESD) Board of Review affirmed the Appeals Tribunal's decision granting Chavez' claim for benefits. The district court, on certiorari, reversed the decision of the ESD Board of Review and directed the ESD to set aside the decision of the Board of Review and to deny Chavez' claim for benefits. ESD appeals. We affirm.

ESD challenges the court's Finding of Fact No. 10, that Chavez voluntarily left his employment without good cause to return to school at New Mexico Highlands University. ESD also challenges Conclusions of Law Nos. 5, 6, 7 and 8, that Chavez voluntarily left his employment without good cause to return to school. However, we note that ESD does not challenge Conclusion of Law No. 4, which reads:

Leaving employment to attend school is a voluntary leaving without good cause in connection with the employment, and such voluntary leaving requires disqualification from receiving unemployment compensation benefits.

■ The issue before us on appeal is whether a college student employed in a summer employment program, who expresses his intention to return to school at the end of the summer and who, in fact, returns to school, has voluntarily left his employment without good cause related to the employment. Under the facts in this case we hold that Chavez voluntarily left his employment without good cause.

Phelps Dodge and Chavez agreed that Chavez would be available for employment for a limited period only, at the end of which the employee would be unavailable. This is an important factor affecting the result reached in this case. At the outset of their relationship, Chavez told Phelps Dodge that he intended to return to school. It is uncontested that Chavez did return to college and that he was unavailable to work for Phelps Dodge during the time he was in school and that he did not intend to return to work with Phelps Dodge. Chavez did not apply for permanent employment until *after* he had been in school in the fall of 1981. When Chavez applied for permanent

employment in November 1981, he admitted that the reason for his separation from Phelps Dodge in August 1981 was to "go back to school."

There is substantial evidence in the record to support the trial court's finding that Chavez requested that his employment not extend beyond August 25, 1981. In addition, the record shows that in his application for summer employment, Chavez stated:

I am applying for temporary employment only with Phelps Dodge Corporation and I request that such employment not extend beyond 8–25–81. I attended New Mexico Highlands University as a full-time student during the most recent regular term and will graduate or register for full-time attendance for the next regular term.

■ On appeal, this Court reviews the record to determine whether there is substantial evidence to support the trial court's findings. If such substantial evidence appears in the record, the district court's findings will not be disturbed. *Sandoval v. Department of Employment Security*, 96 N.M. 717, 634 P.2d 1269 (1981). There was substantial evidence before the district court to find that Chavez voluntarily left his employment to return to school.

The statute in New Mexico which specifically addresses eligibility to receive benefits is NMSA 1978, § 51–1–7(A) (Repl.Pamp. 1981). It provides:

An individual shall be disqualified for, and shall not be eligible to receive, benefits:

A. if it is determined by the department that he left his employment voluntarily without good cause in connection with his employment.

■ In this case, the ESD determined that Chavez was eligible for unemployment benefits and that he had not left his employment voluntarily without good cause. We disagree. The judgment of the district court is consistent with the intent and purpose of the statute, to deny benefits if there has been a voluntary leaving of employ-

ment without good cause. *See generally LeMon v. Employment Security Commission,* 89 N.M. 549, 555 P.2d 372 (1976).

Leaving one's employment to attend school is generally regarded to be a voluntary leaving without good cause related to the employment. *See e.g., Perales v. Department of Human Resources Development,* 32 Cal.App.3d 332, 108 Cal.Rptr. 167 (1973); *Christophe v. Levine,* 50 A.D.2d 705, 375 N.Y.S.2d 483 (1975); *Dreistadt v. Catherwood,* 29 A.D.2d 807, 286 N.Y.S.2d 921 (1968); *Smith v. Employment Division,* 34 Or.App. 623, 579 P.2d 310 (1978); *Zook v. Unemployment Compensation Board of Review,* 200 Pa.Super. 414, 188 A.2d 783 (1963); *Keisling v. Unemployment Compensation Bd. of Rev.,* 198 Pa.Super. 345, 181 A.2d 717 (1962); *Fentersheib v. Unemployment Comp. Bd. of Rev.,* 181 Pa.Super. 289, 124 A.2d 375 (1956); *Kaminski v. Unemployment Compensation Board of Review,* 174 Pa.Super. 242, 101 A.2d 132 (1953); *Pelecovich v. Unemployment Compensation Bd. of Rev.,* 172 Pa.Super. 646, 94 A.2d 154 (1953).

The key to the result we reach in this case relates directly to whether Chavez' objective when he left his employment with Phelps Dodge was to become legitimately attached to the labor market or whether his intent was to pursue his college education. This analysis is fundamental to a proper resolution of the disqualification question. Thus, in *De Mito v. Unemployment Compensation Bd. of Review,* 193 Pa.Super. 201, 202, 163 A.2d 688, 689 (1960), a claim was disallowed where the evidence showed "his primary objective was to obtain a college education" and he was not "genuinely attached to the labor market." In the present case, the evidence clearly supports a conclusion that Chavez' main objective throughout was to return to school at summer's end and to pursue his education. *See also Smith v. Employment Division, supra; Gulbin v. Unemployment Compensation Bd. of Review,* 191 Pa.Super. 646, 159 A.2d 37 (1960).

ESD argues that Phelps Dodge is creating a special rule applicable only to students, treating them differently from other employees. We interpret the disqualification for compensation in this case to mean that students are treated the same as, not differently than, other employees who leave their jobs for personal reasons unrelated to the employment, such as to attend school.

■ ESD cites *Duval Corporation v. Employment Securities Com'n,* 83 N.M. 447, 493 P.2d 413 (1972), for the proposition that a claimant's eligibility must be tested by looking to the circumstances and intentions of the parties at the time of separation. We have no quarrel with that rule. In this case the record clearly shows that Chavez' intention was to return to school in August 1981, and that he did not intend to return to work.

We understand, as brought to our attention by ESD, that some other employers in New Mexico recognize that returning to school constitutes good cause for leaving employment and therefore they subject themselves to payment of unemployment compensation. We cannot interfere with positions voluntarily followed by other employers; nor can we comment on those positions unless they are presented to us. Each claim must be resolved based upon the facts presented. Surely, no one seriously questions the laudibility of programs initiated by employers to hire young people for a short period of time so that they may earn money to help them get an education. The fact that the employer does not assume an additional obligation (unless the intentions of the parties and the facts warrant) to pay unemployment compensation claims filed after the employee leaves his employment voluntarily and returns to school should not detract from the worthiness of such programs.

The judgment of the trial court is affirmed. Phelps Dodge shall recover its costs on appeal.

IT IS SO ORDERED.

PAYNE, C.J., RIORDAN and STOWERS, JJ., concur.

SOSA, Senior Justice, dissenting.

I respectfully dissent. Phelps Dodge offered the claimant employment for a specified term only. It is the general rule that a claimant will not be disqualified from unemployment benefits at the expiration of term employment. *Anthony Adams AIA Architect v. Department of Employment Security,* 139 Vt. 413, 430 A.2d 446 (1981); *Alcorn v. Daniels,* 603 S.W.2d 478 (Ark.App. 1980); *Intermountain Jewish News, Inc. v. Industrial Commission,* 39 Colo.App. 258, 564 P.2d 132 (1977); *Loftis v. Legionville School Safety Patrol Training Center, Inc.,* 297 N.W.2d 237 (Minn.1980).

Because the claimant's employment with Phelps Dodge was merely term employment, the provisions of NMSA 1978, Section 51–1–7(A) (Repl.Pamp.1981) are inapplicable to disqualify the claimant from receiving unemployment benefits. The claimant did not leave his employment "voluntarily without good cause in connection with his employment." *Id.* The job was no longer available to him. He did not have the option of continuing to work. He became unemployed because of a lack of work, not voluntarily. *See Anthony Adams AIA Architect v. Department of Employment Security,* 139 Vt. 413, 430 A.2d 446 (1981). An individual who enters into a contract of employment for a given period of time does not voluntarily leave the employment upon completion of the period of time specified in the contract. *Alcorn v. Daniels,* 603 S.W.2d 478 (Ark.App.1980). Since Phelps Dodge never offered the claimant employment other than term employment, it is mere speculation for the majority to conclude that the claimant would not have accepted permanent employment.

All the cases cited by the majority for the proposition that quitting a job to attend school constitutes a voluntary departure without good cause involved situations in which a claimant, in order to attend school, left a position that was available to him or to her and which the employer was then required to fill with another employee. Many of those cases are premised upon the claimant's unavailability for employment because of his or her educational pursuits. Courts are understandably unwilling to approve the subsidization of an individual's education through unemployment benefits. That is not, however, the situation presented by the instant case.

If a worker and his employer mutually agree that the worker's employment is to be for a specified term only, upon the expiration of that term, the worker will be eligible for unemployment compensation benefits when he returns to the job market, *even though he does not return to the job market immediately upon his termination.* *See* NMSA 1978, § 51–1–5(B) (Supp.1982). A worker's plans for the period following the expiration of term employment are irrelevant for purposes of determining his eligibility for unemployment benefits. I see no reason to treat a person who elects to complete his studies before returning to the job market less favorably than a person who elects to take a vacation before returning to the job market.

The Employment Security Department has ruled that the circumstances of this case prevent the application of Section 51–1–7(A) to disqualify the claimant from the receipt of unemployment benefits. In construing the Unemployment Compensation Law, NMSA 1978, Sections 51–1–1 through 51–1–54 (Repl.Pamp.1981 and Supp.1982), this Court should give deference to the experience, technical competency, and specialized knowledge of the agency. NMSA 1978, § 12–8–22(A). Where there is "substantial evidence to support the findings and conclusions made by the [Employment Security] Commission" the trial court errs "in refusing to adopt the Commission's findings and conclusions." *Ribera v. Employment Security Commission,* 92 N.M. 694, 696, 594 P.2d 742, 744 (1979).

The claimant is "unemployed through no fault of [his] own." § 51–1–3. He "is able to work and is available for work and is actively seeking work." § 51–1–5(A)(3). I would, therefore, hold that because the Phelps Dodge employment was term employment, the provisions of Section 51–1–7(A) are inapplicable, and the claimant's

return to school following the termination of his job does not constitute voluntarily leaving his employment without good cause.